UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

ANTONIO WILLIAMS,

Plaintiff,

-against-

THE CITY OF NEW YORK, OFFICER DANIEL WARD,
DETECTIVE DANIEL GUKELBERGER, and
SERGEANT DONALD KIPP,

Defendants.

------------------------------------------------------------------------x

**DECLARATION OF
EDWARD SIVIN IN
OPPOSITION OF
DEFENDANTS' MOTION
FOR PARTIAL SUMMARY
JUDGMENT**

No. 16-cv-4615 (ENV) (SMG)

Edward Sivin, an attorney duly admitted to practice in the Eastern District of New York, declares pursuant to 28 US.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am a member of Sivin & Miller LLP, attorneys for plaintiff ANTONIO WILLIAMS (hereinafter "plaintiff") in the above-captioned action. As such, I am familiar with the facts stated herein and submit this declaration to place on the record the relevant documents and procedural history in opposition to defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

2. On December 24, 2015, plaintiff served a notice of claim on the City of New York, asserting various claims, arising out of plaintiff's January 17, 2014 arrest and subsequent criminal prosecution. See Copy of Notice of Claim, annexed hereto as **Exhibit "1."** The notice of claim named as defendants the City of New York, NYPD Officer Daniel Ward, NYPD Officer John Doe, and NYPD Sergeant Donald Kipp. Id. Plaintiff further explained in the notice of claim that "John Doe is intended to designate an NYPD Officer who, upon information and belief, was assigned to the 103rd Precinct on January 17, 2014 and was working as a partner of Officer Daniel Ward on that day." Id.

3.      Plaintiff then commenced the instant action by filing a complaint in the United States District Court for the Eastern District of New York on September 6, 2016, asserting various claims under 42 U.S.C. § 1983 and New York State law, arising out of plaintiff's January 17, 2014 arrest and subsequent criminal prosecution. See Copy of Original Complaint, annexed hereto as **Exhibit "2."** The complaint named as defendants the City of New York, Officer Ward, Officer John Doe, and Sergeant Kipp. Id.  Again, plaintiff explained in the complaint that "defendant NYPD Officer John Doe . . . a fictitious name intended to represent an NYPD Officer whose identity is unknown to plaintiff and who, with Ward, participated in the forcible seizure, arrest, and prosecution of plaintiff, was and is employed as a police officer with the NYPD." Id. Defendants City of New York, Officer Ward, and Sergeant Kipp interposed an answer to the original complaint on December 5, 2016. See Docket Entry No. 12.

4.      On September 23, 2016, Magistrate Judge Steven M. Gold issued an Order scheduling an initial conference in this case for January 6, 2017. See Docket Entry No. 10.  The order directed that "[a]t least two days prior to the conference, the parties shall also exchange the names and, if known, the addresses and telephone numbers of persons who are likely to have knowledge of discoverable information relevant to disputed facts, and comply with the automatic disclosure requirements in Rule 26(a)(a) of the Federal Rules of Civil Procedure." Id.

5.      Prior to the January 6, 2017 conference date, defense counsel, alleging other purported commitments, requested an adjournment of the initial conference  Plaintiff's counsel consented to this adjournment on the condition, as defense counsel noted in his Declaration, that defense counsel provide defendants' Rule 26(a) exchange prior to the original initial conference date, which was January 6, 2017. See Docket Entry No. 13. Obtaining the witness exchanges by January 6, 2017 would give plaintiff ample time to amend the complaint to add additional officers

– as appropriate – within the January 17, 2017 Statute of Limitations for 42 U.S.C. § 1983 claims for, *inter alia*, false arrest, illegal search and seizure, and excessive force.

6.      Plaintiff's counsel served plaintiff's Rule 26(a) disclosures on January 6, 2017, but defendant's counsel did not produce defendants' Rule 26(a) exchange until January 26, 2017, which identified Det. Daniel Gukelberger as a witness. See Defendants' Rule 26(a) disclosures, the cover pages of which are annexed hereto as **Exhibit "3."**

7.      On January 30, 2017, plaintiff amended his complaint to add Det. Daniel Gukelberger as a named defendant. See Copy of Amended Complaint, annexed hereto as **Exhibit "4."** The complaint alleged that both Officer Ward and Det. Gukelberger acted in concert to falsely arrest and maliciously prosecute plaintiff on false charges that plaintiff failed to signal while making a turn and that plaintiff was in possession of an illegal "gravity knife." Id. The complaint further alleged damages, including *inter alia*, physical and psychological damages, which plaintiff continues to endure, deprivation of his liberty, and suffering of humiliation, damage to reputation, loss of income, loss of his business, lost earnings potential, and other economic losses. Id. Defendants City of New York, Officer Ward, and Sergeant Kipp interposed an Answer to Amended Complaint on April 10, 2017, and defendant Det. Gukelberger interposed an Answer to the Amended Complaint on April 27, 2017. See Docket Entry Nos. 22, 25.

8.      Annexed hereto as **Exhibit "5"** is a copy of excerpts from the transcript of plaintiff's G.M.L. § 50-h hearing, held on March 22, 2016, at which plaintiff testified under oath regarding, *inter alia*, the facts and circumstances of plaintiff's January 17, 2014 arrest.

9.      Annexed hereto as **Exhibit "6"** is a copy of excerpts from the transcript of plaintiff's deposition, held on June 15, 2017, at which plaintiff testified under oath regarding, *inter alia*, the facts and circumstances of plaintiff's January 17, 2014 arrest.

10.     Annexed hereto as **Exhibit "7"** is a copy of excerpts from the transcript of Officer Ward's deposition, held on June 15, 2017, at which Officer Ward testified under oath regarding, *inter alia*, the facts and circumstances of plaintiff's January 17, 2014 arrest.

11.     Annexed hereto as **Exhibit "8"** is a copy of the Criminal Court Complaint, which Officer Ward swore to, and signed, outlining his participation in plaintiff's January 17, 2014 arrest, as well as setting forth the criminal charges against plaintiff for Criminal Possession of a Weapon in the Fourth Degree and violation of New York Vehicle and Traffic Law § 1163–C.

12.     Annexed hereto as **Exhibit "9"** is a copy of the Arrest Report for plaintiff's arrest, which was completed by Officer Ward, and which outlines the arrest charges against plaintiff.

Dated:      New York, New York
            December 20, 2017

                                        SIVIN & MILLER, LLP

                                        By
                                            Edward Sivin
                                        Attorneys for Plaintiff
                                        20 Vesey Street, Suite 1400
                                        New York, New York 10007
                                        (212) 349-0300

- 4 -

# EXHIBIT "1"

## NOTICE OF CLAIM

In the Matter of the Claim of

### ANTONIO WILLIAMS

-against-

### THE CITY OF NEW YORK, NYPD OFFICER DANIEL WARD,
### NYPD OFFICER JOHN DOE and NYPD SERGEANT DONALD KIPP

2015 DEC 24  PM 1:07

TO: THE CITY OF NEW YORK
     NYPD OFFICER DANIEL WARD
     NYPD OFFICER JOHN DOE
     NYPD SERGEANT DONALD KIPP

     **PLEASE TAKE NOTICE**, that the undersigned claimant hereby makes claim and demand against The City of New York, NYPD Officer Daniel Ward, NYPD Office John Doe, and NYPD Sergeant Donald Kipp, as follows:

     **1. The name and post-office address of each claimant and claimant's attorney is:**

Antonio Williams
143 N. Center Street
Goldsboro, NC  27530

Sivin & Miller, LLP
Attorneys for claimant
20 Vesey St., Suite 1400
New York, NY  10007

     **2. The nature of the claim is:**

     To recover damages for injuries sustained by claimant as a result of a malicious prosecution by the City of New York, its agents, servants and/or employees, including but not limited to agents, servants and/or employees of the New York Police Department (NYPD), including but not limited to P.O. Daniel Ward, P.O. John Doe,[1] and Sgt. Donald Kipp.

     **3. The time when, the place where and the manner in which the claim arose:**

     The claim arose out of events that began on or about January 17, 2014 in the County of Queens, City and State of New York.  At the aforesaid time and place, NYPD officers, including P.O. Daniel Ward, P.O. John Doe, and Sgt. Donald Kipp, maliciously prosecuted claimant by initiating criminal charges against claimant of which they knew claimant to be innocent.  The charges were contained in a Criminal Court Complaint bearing docket number 2014QN003220. All charges against claimant were dismissed on about October 7, 2015.

---

[1] John Doe is intended to designate an NYPD Officer who, upon information and belief, was assigned to the 103rd Precinct on January 17, 2014 and was working as a partner of Officer Daniel Ward on that day.

**4. The items of damage and injuries claimed are (include dollar amounts):**

Claimant sustained physical and psychological injuries, as well as conscious pain and suffering, loss of enjoyment of life, embarrassment, humiliation, loss of liberty, damage to reputation, lost earnings and other economic loss, all to his damage in the amount of TWO MILLION ($2,000,000.00) DOLLARS.

The undersigned claimant therefore presents this claim for adjustment and payment. You are hereby notified that unless it is adjusted and paid within the time provided by law from the date of presentation to you, the claimant intends to commence an action on this claim.

Dated: New York, New York
December 24, 2015

SIVIN & MILLER, LLP

By_____
Edward Sivin
Attorneys for Claimant
20 Vesey St., Suite 1400
New York, NY 10007
(212) 349-0300

<u>VERIFICATION</u>

EDWARD SIVIN, an attorney duly admitted to practice law in the State of New York, hereby affirms the following, under penalty of perjury:

That I am the attorney for the claimant in the within Claim.

That I have read the foregoing Notice of Claim and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be upon information and belief; and as to those matters I believe it to be true.

That the reason this verification is made by your affirmant and not by claimant is that claimant does not reside in the County where your affirmant maintains his office.

That the grounds for your affirmant's belief as to all matters not stated upon my knowledge are as follows:  records, reports, facts and documents contained in claimant's file maintained by your affirmant's office.


Dated:  New York, New York
        December 24, 2015


_____
        EDWARD SIVIN

# EXHIBIT "2"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
ANTONIO WILLIAMS,

           Plaintiff,

      -against-

THE CITY OF NEW YORK,
NYPD OFFICER DANIEL WARD,
NYPD OFFICER JOHN DOE and
NYPD SERGEANT DONALD KIPP,

           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**

Trial by Jury Demanded

      Plaintiff, by his attorneys Sivin & Miller, LLP, complaining of defendants, alleges as follows, upon information and belief:

### THE PARTIES, JURISDICTION and VENUE

      1.  That at all times herein mentioned, plaintiff was and is a United States citizen.

      2.  That this Court has jurisdiction over this action in that some of the causes of action herein arise under 42 U.S.C. § 1983.

      3.  That venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(a) in that the events giving rise to this action occurred in this district.

      4.  That at all times herein mentioned, defendant The City of New York (hereinafter "the City") was and is a municipal corporation, organized and existing under and by virtue of the laws of the State of New York.

      5.  That prior to the institution of this action and within ninety (90) days from the date when the state-law cause of action accrued herein, a notice of claim and intention to sue was duly served upon and filed with the defendants on behalf of plaintiff; that this action was not commenced until the expiration of thirty (30) days after such notice

of claim and intention to sue was presented and the defendants have neglected and/or refused to make adjustment or payment thereon, and this action is being commenced within one year and ninety days after the state-law cause of action accrued herein.

6. That at all times herein mentioned, the City operated, controlled, and maintained a police force known as the New York Police Department (hereinafter "the NYPD").

7. That at all times herein mentioned, defendant NYPD Officer Daniel Ward (hereinafter "Ward") was and is employed as a police officer with the NYPD.

8. That at all times herein mentioned, Ward was acting within the course and scope of his employment with the NYPD.

9. That at all times herein mentioned, Ward was acting under color of state law.

10. That at all times herein mentioned, defendant NYPD Officer John Doe (hereinafter "Doe"), a fictitious name intended to represent an NYPD Officer whose identity is unknown to plaintiff and who, with Ward, participated in the forcible seizure, arrest, and prosecution of plaintiff, was and is employed as a police officer with the NYPD.

11. That at all times herein mentioned, Doe was acting within the course and scope of his employment with the NYPD.

12. That at all times herein mentioned, Doe was acting under color of state law.

13. That at all times herein mentioned, defendant NYPD Sergeant Donald Kipp (hereinafter "Kipp"), was and is employed as a police sergeant with the NYPD.

Case 1:16-cv-04615   Document 1   Filed 09/06/16   Page 3 of 10 PageID #: 3

14. That at all times herein mentioned, Kipp was acting within the course and scope of his employment with the NYPD.

15. That at all times herein mentioned, Kipp was acting under color of state law.

16. That all of the causes of action pleaded herein fall within one or more of the exceptions set forth in New York's Civil Practice Law & Rules § 1602 with respect to joint and several liability.

## FACTS

17. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth at length herein.

18. On January 17, 2014, plaintiff was operating a motor vehicle on a public roadway in the County of Queens, City and State of New York.

19. While he was operating the motor vehicle, plaintiff was directed by Ward and Doe to pull his vehicle over, and plaintiff complied with that directive.

20. After he pulled the vehicle over, plaintiff was directed by Ward to exit the vehicle.

21. Plaintiff then questioned Ward as to why he had to exit the vehicle, and Ward responded by opening the driver's door and forcibly removing plaintiff from the vehicle.

22. Plaintiff was advised by Ward that he was pulled over because he failed to apply the vehicle's turn signal before making a turn.

23. Ward's statement to plaintiff that he failed to apply the vehicle's turn signal was false, as plaintiff had not failed to apply the turn signal.

24. Ward knew at the time he made the statement that plaintiff had not in fact failed to apply the turn signal.

25. Ward's claim that plaintiff failed to apply the turn signal was a mere pretext to justify Ward's and Doe's directive to plaintiff that he pull the vehicle over.

26. At the time he was directed to pull the vehicle over, plaintiff had not violated any laws or traffic regulations, and defendants knew that plaintiff had not violated any laws or traffic regulations.

27. After plaintiff was forcibly removed from his vehicle, Ward placed plaintiff tightly in handcuffs and physically detained and imprisoned plaintiff outside the vehicle and then inside a police vehicle.

28. While Ward physically detained and imprisoned plaintiff, Doe searched through the vehicle that plaintiff had been operating.

29. Doe's search of the vehicle was undertaken without a warrant, without plaintiff's consent, without probable cause or reasonable suspicion to believe that plaintiff had committed or was about to commit a crime or violation, and without any legitimate concern for the officers' safety or for the preservation of evidence.

30. After Doe conducted an extensive search of the vehicle, Doe and Ward purported to have recovered a "gravity knife" from inside the vehicle.

31. In fact, neither Doe nor Ward recovered a "gravity knife" from plaintiff's vehicle, and neither officer recovered any illegal knife or any other contraband from the vehicle.

32. Nevertheless, after purporting to recover a "gravity knife" from the vehicle, Doe physically seized and drove off with the vehicle, and Ward forcibly transported plaintiff to the 107th Police Precinct.

33. After being imprisoned at the 103rd Precinct for several hours, plaintiff was forcibly transferred to Central Booking, where he remained imprisoned in excess of twelve hours.

34. While he was in Ward's custody, plaintiff repeatedly complained to Ward that the handcuffs were too tight and were causing him pain, and he repeatedly requested that Ward loosen or adjust the handcuffs; Ward ignored all of plaintiff's complaints and requests and failed and refused to loosen or adjust the handcuffs

35. As a result of the overly tight handcuffs, plaintiff was caused to suffer unnecessary pain and discomfort.

36. On or about January 17, 2014, Ward and Doe also initiated and/or caused to be initiated against plaintiff a criminal prosecution, charging plaintiff with criminal possession of a weapon in the fourth degree and a violation of New York's Vehicle & Traffic Law.

37. In support of the criminal prosecution, Ward and Doe knowingly made false accusations against plaintiff, accusing plaintiff of possession of a gravity knife and of making a turn in a motor vehicle without applying the turn signal.

38. Plaintiff was not in possession of a gravity knife or any other contraband, and he had not failed to apply the turn signal.

39. Neither Ward nor Doe had probable cause to initiate the criminal prosecution against plaintiff.

40. The aforementioned actions by Ward and Doe were intentional and malicious in nature.

Case 1:16-cv-04615  Document 1  Filed 09/06/16  Page 6 of 10 PageID #: 6

41. As a result of the unfounded and malicious prosecution, plaintiff was required to make over a dozen court appearances to defend against the baseless charges and was restricted in his travel and liberty.

42. On October 7, 2015, nearly two years after the initiation of the prosecution, all charges against plaintiff were dismissed and the criminal proceeding terminated favorably to plaintiff.

43. At all times herein mentioned, Kipp was Ward's and Doe's supervisor, and he approved, sanctioned, and condoned the actions of Ward and Doe and the arrest and prosecution of plaintiff.

44. That each of the named defendants observed and/or knew of the improper and unconstitutional conduct of their fellow officers, had a reasonable opportunity to intervene to prevent and/or stop that conduct, but failed and refused to do so.

45. As a result of the aforementioned conduct by defendants herein, plaintiff sustained physical and psychological injuries, endured and continues to endure pain and suffering and loss of enjoyment of life, was deprived of his liberty and suffered humiliation, damage to reputation, loss of income, loss of his business, lost earnings potential, and other economic loss.

### FIRST CAUSE OF ACTION AGAINST WARD and DOE
(42 U.S.C. § 1983: Illegal Search and Seizure)

46. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

47. That the aforesaid actions by Ward and Doe in unlawfully pulling plaintiff over, forcibly removing plaintiff from the vehicle and handcuffing him, conducting a warrantless search of the vehicle, driving the vehicle from the scene without

plaintiff's consent, and/or in allowing their fellow officer to engage in the aforesaid conduct, constituted illegal and unreasonable searches and seizures of plaintiff in violation of the proscription against unreasonable searches and seizures contained in the Fourth Amendment to the United States Constitution, and entitle plaintiff to recover monetary damages under 42 U.S.C. § 1983.

### SECOND CAUSE OF ACTION AGAINST WARD and DOE
#### (42 U.S.C. § 1983:  Excessive Force)

48.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

49.  That the aforesaid actions by Ward and Doe in forcibly removing plaintiff from the vehicle, handcuffing plaintiff, and ignoring plaintiff's requests to loosen or adjust handcuffs that had been applied too tightly, and/or in allowing their fellow officer to engage in the aforesaid conduct constituted a use of excessive force against plaintiff, in violation of the proscription against unreasonable seizures contained in the Fourth Amendment to the United States Constitution, and entitle plaintiff to recover monetary damages under 42 U.S.C. § 1983.

### THIRD CAUSE OF ACTION AGAINST WARD, DOE and KIPP
#### (42 U.S.C. § 1983:  False Arrest/Imprisonment)

50.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

51.  That the aforesaid actions by Ward, Doe, and Kipp in forcibly detaining, arresting, and imprisoning plaintiff without a warrant and without probable cause or other legal justification, and/or in allowing their fellow officers to engage in the aforesaid conduct constituted a false arrest and false imprisonment of plaintiff in violation of the proscription against unreasonable seizures contained in the Fourth Amendment to

Case 1:16-cv-04615   Document 1   Filed 09/06/16   Page 8 of 10 PageID #: 8

the United States Constitution, and entitle plaintiff to recover monetary damages under 42 U.S.C. § 1983.

### FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
(Malicious Prosecution Under NY State Law)

52.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

53.  That the aforesaid actions by Ward, Doe, and Kipp in initiating and/or causing to be initiated the prosecution of plaintiff, and/or in allowing their fellow officers to engage in the aforesaid conduct, constituted a malicious prosecution of plaintiff, for which Ward, Doe, and Kipp are liable under New York State law and for which the City is vicariously liable under the doctrine of respondeat superior.

### FIFTH CAUSE OF ACTION AGAINST WARD, DOE and KIPP
(42 U.S.C. § 1983: Malicious Prosecution)

54.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

55.  That the aforesaid actions by Ward, Doe, and Kipp in initiating and/or causing to be initiated the prosecution of plaintiff, and/or in allowing their fellow officers to engage in the aforesaid conduct, constituted a malicious prosecution of plaintiff in violation of the proscription against unreasonable seizures contained in the Fourth Amendment to the United States Constitution, and entitle plaintiff to recover monetary damages under 42 U.S.C. § 1983.

WHEREFORE, plaintiff demands judgment in the form of compensatory damages against defendants, and each of them, on all of the aforementioned causes of action, each in the amount of Two Million ($2,000,000.00) Dollars, together with punitive damages against Ward, Doe, and Kipp, each in the amount of Two Hundred Fifty

Thousand ($250,000.00) Dollars, and plaintiff demands attorneys' fees against Ward, Doe, and Kipp pursuant to 42 U.S.C. § 1988, and plaintiff demands the costs and disbursements of this action.

Dated:  New York, New York
        August 17, 2016

                                        Yours, etc.
                                        SIVIN & MILLER, LLP

                                    By _____
                                        Edward Sivin
                                        Attorneys for Plaintiff
                                        20 Vesey Street, Suite 1400
                                        New York, N.Y.  10007
                                        (212) 349-0300

Case 1:16-cv-04615   Document 1   Filed 09/06/16   Page 10 of 10 PageID #: 10

Case No.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANTONIO WILLIAMS,

Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

Defendants.

## COMPLAINT

SIVIN & MILLER, LLP
Attorneys for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
(212) 349-0300
FAX (212) 406-9462

EXHIBIT "3"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

ANTONIO WILLIAMS,

                       Plaintiff,

          -against-

THE CITY OF NEW YORK, et al.,

                    Defendants.

-------------------------------------------------------- x

**DEFENDANTS' INITIAL
DISCLOSURES**

16-CV-4615 (ENV) (SMG)

Defendants The City of New York, Officer Daniel Ward, and Sergeant Donald Kipp

("defendants"), by their attorney, Zachary W. Carter, Corporation Counsel of the City of New

York, pursuant to Fed. R. Civ. P. 26(a)(1)(A), hereby submit the following for their initial

disclosures:

    i.  the name and, if known, the address and telephone number of each individual
        likely to have discoverable information that the disclosing party may use to
        support its claims or defenses, unless solely for impeachment, identifying the
        subjects of information:

        1.      Officer Daniel Ward, Shield # 21743, c/o Office of Corporation
              Counsel, 100 Church Street, New York, NY 10007 [subject of
              information: *defendant*; aware of certain facts and circumstances
              resulting in plaintiff's arrest);

        2.      Sergeant Donald Kipp, Shield # 01024, c/o Office of Corporation
              Counsel, 100 Church Street, New York, NY 10007 [subject of
              information: *defendant*; has little to no memory of the facts and
              circumstances related to plaintiff's arrest].

        3.      Detective Daniel Gukelberger, Shield #4901, c/o 1 Police Plaza,
              Room 1200, New York, NY 10038 [subject of information:
              possibly aware of certain facts and circumstances resulting in
              plaintiff's arrest].

   ii.  a copy of, or a description by category and location of, all documents, data
        compilations, and tangible things that are in the possession, custody or control

of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of information[1]:

1. Arrest Report – DEF 1 – 3

2. OLPA – DEF 4 – 5

3. Criminal Court File – DEF 5 – 14

4. District Attorney File – DEF 15 – 57

5. Officer Ward's Memo Book – DEF 58 – 59

6. Sergeant Kipp's Memo Book – DEF 60 –61

iii. a computation of any category of damages claimed by the disclosing party, making available for inspection and copying under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered:

Not applicable.

iv. for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment:

Not applicable.

---

[1] Any redactions in the district attorney paperwork were made by the Office of the District Attorney.

DATED:     New York, New York
           January 26, 2017

Respectfully submitted,

ZACHARY W. CARTER
Corporation Counsel of the
City of New York
*Attorney for Defendants City, Ward, and Kipp*
100 Church Street, Room 3-126
New York, New York  10007
(212) 356-3513
(212) 356-3509 (fax)
bkuruvil@law.nyc.gov

By: _____
            Ben Kuruvilla

TO:     <u>VIA E-MAIL AND HAND DELIVERY</u>
        Edward Sivin
        Sivin & Miller, LLP
        20 Vesey Street, Suite 1400
        New York, NY 10007
        esivin@sivinandmiller.com

- 3 -

EXHIBIT "4"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ANTONIO WILLIAMS,

             Plaintiff,

        -against-

THE CITY OF NEW YORK,
NYPD OFFICER DANIEL WARD,
NYPD DETECTIVE DANIEL
GUKELBERGER and
NYPD SERGEANT DONALD KIPP,

             Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**AMENDED**
**COMPLAINT**

Trial by Jury Demanded

16 CV 4615

Plaintiff, by his attorneys Sivin & Miller, LLP, complaining of defendants,

alleges as follows, upon information and belief:

### THE PARTIES, JURISDICTION and VENUE

1. That at all times herein mentioned, plaintiff was and is a United States

citizen.

2. That this Court has jurisdiction over this action in that some of the

causes of action herein arise under 42 U.S.C. § 1983.

3. That venue is proper in the Eastern District of New York pursuant to 28

U.S.C. § 1391(a) in that the events giving rise to this action occurred in this district.

4. That at all times herein mentioned, defendant The City of New York

(hereinafter "the City") was and is a municipal corporation, organized and existing under

and by virtue of the laws of the State of New York.

5. That prior to the institution of this action and within ninety (90) days

from the date when the state-law cause of action accrued herein, a notice of claim and

intention to sue was duly served upon and filed with the defendants on behalf of plaintiff;

that this action was not commenced until the expiration of thirty (30) days after such notice of claim and intention to sue was presented and the defendants have neglected and/or refused to make adjustment or payment thereon, and this action is being commenced within one year and ninety days after the state-law cause of action accrued herein.

6. That at all times herein mentioned, the City operated, controlled, and maintained a police force known as the New York Police Department (hereinafter "the NYPD").

7. That at all times herein mentioned, defendant NYPD Officer Daniel Ward (hereinafter "Ward") was and is employed as a police officer with the NYPD.

8. That at all times herein mentioned, Ward was acting within the course and scope of his employment with the NYPD.

9. That at all times herein mentioned, Ward was acting under color of state law.

10. That at all times herein mentioned, defendant NYPD Detective Daniel Gukelberger (hereinafter "Gukelberber"), was and is employed as a police detective with the NYPD.

11. That at all times herein mentioned, Gukelberger was acting within the course and scope of his employment with the NYPD.

12. That at all times herein mentioned, Gukelberger was acting under color of state law.

13. That at all times herein mentioned, defendant NYPD Sergeant Donald Kipp (hereinafter "Kipp"), was and is employed as a police sergeant with the NYPD.

14. That at all times herein mentioned, Kipp was acting within the course and scope of his employment with the NYPD.

15. That at all times herein mentioned, Kipp was acting under color of state law.

16. That all of the causes of action pleaded herein fall within one or more of the exceptions set forth in New York's Civil Practice Law & Rules § 1602 with respect to joint and several liability.

## FACTS

17. Plaintiff repeats and realleges each and every allegation contained above as though fully set forth at length herein.

18. On January 17, 2014, plaintiff was operating a motor vehicle on a public roadway in the County of Queens, City and State of New York.

19. While he was operating the motor vehicle, plaintiff was directed by Ward and Gukelberger to pull his vehicle over, and plaintiff complied with that directive.

20. After he pulled the vehicle over, plaintiff was directed by Ward to exit the vehicle.

21. Plaintiff then questioned Ward as to why he had to exit the vehicle, and Ward responded by opening the driver's door and forcibly removing plaintiff from the vehicle.

22. Plaintiff was advised by Ward that he was pulled over because he failed to apply the vehicle's turn signal before making a turn.

23. Ward's statement to plaintiff that he failed to apply the vehicle's turn signal was false, as plaintiff had not failed to apply the turn signal.

24. Ward knew at the time he made the statement that plaintiff had not in fact failed to apply the turn signal.

25.  Ward's claim that plaintiff failed to apply the turn signal was a mere pretext to justify Ward's and Gukelberger's directive to plaintiff that he pull the vehicle over.

26.  At the time he was directed to pull the vehicle over, plaintiff had not violated any laws or traffic regulations, and defendants knew that plaintiff had not violated any laws or traffic regulations.

27.  After plaintiff was forcibly removed from his vehicle, Ward placed plaintiff tightly in handcuffs and physically detained and imprisoned plaintiff outside the vehicle and then inside a police vehicle.

28.  While Ward physically detained and imprisoned plaintiff, Gukelberger searched through the vehicle that plaintiff had been operating.

29.  Gukelberger's search of the vehicle was undertaken without a warrant, without plaintiff's consent, without probable cause or reasonable suspicion to believe that plaintiff had committed or was about to commit a crime or violation, and without any legitimate concern for the officers' safety or for the preservation of evidence.

30.  After Gukelberger conducted an extensive search of the vehicle, Gukelberger and Ward purported to have recovered a "gravity knife" from inside the vehicle.

31.  In fact, neither Gukelberber nor Ward recovered a "gravity knife" from plaintiff's vehicle, and neither officer recovered any illegal knife or any other contraband from the vehicle.

32.  Nevertheless, after purporting to recover a "gravity knife" from the vehicle, Gukelberber physically seized and drove off with the vehicle, and Ward forcibly transported plaintiff to the 103rd Police Precinct.

33. After being imprisoned at the 103rd Precinct for several hours, plaintiff was forcibly transferred to Central Booking, where he remained imprisoned in excess of twelve hours.

34. While he was in Ward's custody, plaintiff repeatedly complained to Ward that the handcuffs were too tight and were causing him pain, and he repeatedly requested that Ward loosen or adjust the handcuffs; Ward ignored all of plaintiff's complaints and requests and failed and refused to loosen or adjust the handcuffs.

35. As a result of the overly tight handcuffs, plaintiff was caused to suffer unnecessary pain and discomfort.

36. On or about January 17, 2014, Ward and Gukelberger also initiated and/or caused to be initiated against plaintiff a criminal prosecution, charging plaintiff with criminal possession of a weapon in the fourth degree and a violation of New York's Vehicle & Traffic Law.

37. In support of the criminal prosecution, Ward and Gukelberger knowingly made false accusations against plaintiff, accusing plaintiff of possession of a gravity knife and of making a turn in a motor vehicle without applying the turn signal.

38. Plaintiff was not in possession of a gravity knife or any other contraband, and he had not failed to apply the turn signal.

39. Neither Ward nor Gukelberger had probable cause to initiate the criminal prosecution against plaintiff.

40. The aforementioned actions by Ward and Gukelberger were intentional and malicious in nature.

41.  As a result of the unfounded and malicious prosecution, plaintiff was required to make over a dozen court appearances to defend against the baseless charges and was restricted in his travel and liberty.

42.  On October 7, 2015, nearly two years after the initiation of the prosecution, all charges against plaintiff were dismissed and the criminal proceeding terminated favorably to plaintiff.

43.  At all times herein mentioned, Kipp was Ward's and Gukelberger's supervisor, and he approved, sanctioned, and condoned the actions of Ward and Gukelberger and the arrest and prosecution of plaintiff.

44.  That each of the named defendants observed and/or knew of the improper and unconstitutional conduct of their fellow officers, had a reasonable opportunity to intervene to prevent and/or stop that conduct, but failed and refused to do so.

45.  As a result of the aforementioned conduct by defendants herein, plaintiff sustained physical and psychological injuries, endured and continues to endure pain and suffering and loss of enjoyment of life, was deprived of his liberty and suffered humiliation, damage to reputation, loss of income, loss of his business, lost earnings potential, and other economic loss.

## FIRST CAUSE OF ACTION AGAINST WARD and GUKELBERGER
(42 U.S.C. § 1983:  Illegal Search and Seizure)

46.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

47.  That the aforesaid actions by Ward and Gukelberger in unlawfully pulling plaintiff over, forcibly removing plaintiff from the vehicle and handcuffing him, conducting a warrantless search of the vehicle, driving the vehicle from the scene without

plaintiff's consent, and/or in allowing their fellow officer to engage in the aforesaid

conduct, constituted illegal and unreasonable searches and seizures of plaintiff in violation

of the proscription against unreasonable searches and seizures contained in the Fourth

Amendment to the United States Constitution, and entitle plaintiff to recover monetary

damages under 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION AGAINST WARD and GUKELBERGER
### (42 U.S.C. § 1983: Excessive Force)

48.  Plaintiff repeats and realleges each and every allegation set forth above

as though fully set forth at length herein.

49.  That the aforesaid actions by Ward and Gukelberger in forcibly

removing plaintiff from the vehicle, handcuffing plaintiff, and ignoring plaintiff's requests

to loosen or adjust handcuffs that had been applied too tightly, and/or in allowing their

fellow officer to engage in the aforesaid conduct constituted a use of excessive force

against plaintiff in violation of the proscription against unreasonable seizures contained in

the Fourth Amendment to the United States Constitution, and entitle plaintiff to recover

monetary damages under 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION AGAINST WARD, GUKELBERGER and KIPP
### (42 U.S.C. § 1983: False Arrest/Imprisonment)

50.  Plaintiff repeats and realleges each and every allegation set forth above

as though fully set forth at length herein.

51.  That the aforesaid actions by Ward, Gukelberger, and Kipp in forcibly

detaining, arresting, and imprisoning plaintiff without a warrant and without probable

cause or other legal justification, and/or in allowing their fellow officers to engage in the

aforesaid conduct constituted a false arrest and false imprisonment of plaintiff in violation

of the proscription against unreasonable seizures contained in the Fourth Amendment to

the United States Constitution, and entitle plaintiff to recover monetary damages under 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
(Malicious Prosecution Under NY State Law)

52.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

53.  That the aforesaid actions by Ward, Gukelberger, and Kipp in initiating and/or causing to be initiated the prosecution of plaintiff, and/or in allowing their fellow officers to engage in the aforesaid conduct, constituted a malicious prosecution of plaintiff, for which Ward, Gukelberger, and Kipp are liable under New York State law and for which the City is vicariously liable under the doctrine of respondeat superior.

## FIFTH CAUSE OF ACTION AGAINST WARD, GUKELBERGER and KIPP
(42 U.S.C. § 1983:  Malicious Prosecution)

54.  Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

55.  That the aforesaid actions by Ward, Gukelberger, and Kipp in initiating and/or causing to be initiated the prosecution of plaintiff, and/or in allowing their fellow officers to engage in the aforesaid conduct, constituted a malicious prosecution of plaintiff in violation of the proscription against unreasonable seizures contained in the Fourth Amendment to the United States Constitution, and entitle plaintiff to recover monetary damages under 42 U.S.C. § 1983.

WHEREFORE, plaintiff demands judgment in the form of compensatory damages against defendants, and each of them, on all of the aforementioned causes of action, each in the amount of Two Million ($2,000,000.00) Dollars, together with punitive damages against Ward, Gukelberger, and Kipp, each in the amount of Two Hundred Fifty

Thousand ($250,000.00) Dollars, and plaintiff demands attorneys' fees against Ward,

Gukelberger, and Kipp pursuant to 42 U.S.C. § 1988, and plaintiff demands the costs and

disbursements of this action.


Dated:  New York, New York
        January 30, 2017



                            Yours, etc.
                            SIVIN & MILLER, LLP

                    By _____
                            Edward Sivin
                            Attorneys for Plaintiff
                            20 Vesey Street, Suite 1400
                            New York, NY  10007
                            (212) 349-0300

Case No. 16 CV 4615

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANTONIO WILLIAMS,

                Plaintiff,

      -against-

THE CITY OF NEW YORK, et. al.,

                Defendants.

## AMENDED COMPLAINT

**SIVIN & MILLER, LLP**
Attorneys for Plaintiff
20 Vesey Street, Suite 1400
New York, NY 10007
(212) 349-0300
FAX (212) 406-9462

EXHIBIT "5"

1

2   50-h HEARING
    ------------------------------------------X
3   In the Matter of the Claim of
    ANTONIO WILLIAMS,
4                                   CLAIMANT,

5               -against-

6   THE CITY OF NEW YORK,
                                    RESPONDENT.
7   ------------------------------------------X
    **Claim No:  2016PI000825**
8

9                   DATE:  March 22, 2016

10                  TIME:  2:35 p.m.

11

12

13          50-h HEARING of the Claimant,

14   ANTONIO WILLIAMS, pursuant to statute, held

15   at the office of Jeffrey Samel & Partners,

16   Esqs., 150 Broadway - 16th Floor, New York,

17   New York 10038, before Gloria Anselm, a

18   Notary Public of the State of New York.

19

20

21

22

23

24

25

```
 1

 2     A P P E A R A N C E S:

 3

 4     SIVIN & MILLER, LLP.
         Attorneys for the Claimant
 5       ANTONIO WILLIAMS
         20 Vesey Street - Suite 1400
 6       New York, New York 10007
         BY:  EDWARD SIVIN, ESQ.
 7

 8

 9     JEFFREY SAMEL & PARTNERS, ESQS.
         Attorneys for the Respondent
         THE CITY OF NEW YORK
10       150 Broadway - 16th Floor
         New York, New York 10038
11       BY:  JACOB GOINS, ESQ.
         Claim No:  2016PI000825
12

13
                   *         *         *
14

15

16

17

18

19

20

21

22

23

24

25
```

DIAMOND REPORTING    (718) 624-7200    info@diamondreporting.com

```
 1                      WILLIAMS
 2          Q.     What happened next?
 3          A.     Next, Officer Ward followed him
 4    and they went to the 103rd Precinct in
 5    Queens.
 6          Q.     Were you in the back of the
 7    car?
 8          A.     Correct.
 9          Q.     Did you make any stops from the
10    time you left the area where you were
11    arrested to the time you got to the 103rd
12    Precinct?
13          A.     No.
14          Q.     Do you know what time you got
15    to the 103rd Precinct, approximately?
16          A.     Could have been -- I don't want
17    to speculate.  It had to be close to three
18    o'clock.
19          Q.     Generally, what happened when
20    you got to the precinct?
21          A.     While we were riding I
22    explained to Officer Ward that the
23    handcuffs were hurting my hands, because I
24    have a plate in my hand and I told him it
25    was very tight, but he didn't loosen them.
```

EXHIBIT "6"

SF — N. Manningham

1

2      UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF NEW YORK
3      ------------------------------------------X
       ANTONIO WILLIAMS,
4
                                    PLAINTIFF,
5

6              -against-              Case No.:
                                    16CV4615
7

8      THE CITY OF NEW YORK, NYPD OFFICER DANIEL
       WARD, NYPD DETECTIVE DANIEL GUKELBERGER and
9      NYPD SERGEANT DONALD KIPP,

10                                  DEFENDANTS.
       ------------------------------------------X
11

12                  DATE: June 15, 2017

13                  TIME: 10:08 A.M.

14

15              DEPOSITION of the Plaintiff,

16     ANTONIO WILLIAMS, taken by the Defendants,

17     pursuant to a Notice and to the Federal

18     Rules of Civil Procedure, held at the

19     offices of Sivin & Miller, LLP., 20 Vesey

20     Street, 14th Floor, New York, New York

21     10007, before Rita Papandrea, a Notary

22     Public of the State of New York.

23

24

25

```
 1

 2     A P P E A R A N C E S:

 3

 4     SIVIN & MILLER, LLP.
         Attorneys for the Plaintiff
 5       20 Vesey Street, Suite 1400
         New York, New York 10007
 6       BY:  EDWARD SIVIN, ESQ.

 7

 8     ZACHARY W. CARTER, ESQ.
       CORPORATION COUNSEL
 9     NEW YORK CITY LAW DEPARTMENT
         Attorneys for the Defendants
10       100 Church Street
         New York, New York 10007
11       BY:  NICHOLAS D. MANNINGHAM, ESQ.
                 -and-
12           SHIRA SISKIND, ESQ.
         File #:  2016-036713
13

14              *         *         *

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              A. WILLIAMS
 2   Liberty Avenue, I made a left.  And then
 3   when I got -- I mean I made a left on Guy
 4   Brewer and then I made another right on
 5   Liberty.  And when I was on Liberty, that's
 6   when I saw some police lights and I pulled
 7   directly over.
 8        Q.    Do you remember what the
 9   weather was like on January 17, 2014?
10        A.    It was chilly.
11        Q.    You said that you made a right
12   on Liberty.  What time was that when you
13   made the right approximately?
14        A.    It was in the wee hours of the
15   morning.  It could have been 1:30 or I
16   thought three, I believe.  It could have
17   been somewhere around that time, it was
18   very late.
19        Q.    So that was the morning of
20   January 17, 2014?
21        A.    Yes.
22        Q.    So when you say that you woke
23   up bright and early and went to work at The
24   Twisted Lemonade Factory in Brooklyn, that
25   was on January 16th?
```

```
 1                    A. WILLIAMS
 2   driving?
 3        A.    I do lock it sometimes.   It
 4   wasn't locked.
 5        Q.    When did you first notice his
 6   partner?
 7        A.    When Officer Ward, when he
 8   approached me, I saw him over on the
 9   passenger side looking in the window.
10        Q.    So what year is the van?
11        A.    I believe it's a '98.
12        Q.    And what is the make of the
13   van?
14        A.    It's a Ford.
15        Q.    So it's a Ford, 1998?
16        A.    Econoline.
17        Q.    After Officer Ward opened your
18   door, what happened next?
19        A.    He snatched me out.
20        Q.    Were you saying anything to
21   him?
22        A.    I was asking him why are you
23   taking me out of the car.  I said, Are you
24   placing me in custody?  I said it several
25   times and he never responded.   At this
```

```
 1                    A. WILLIAMS
 2        A.    Yes.
 3        Q.    And then what happened?
 4        A.    Then the other officer came
 5  back and he came back with a knife that I
 6  didn't recognize that was probably that big
 7  (indicating.)  And Officer Ward said, you
 8  got a gravity knife.  And I don't know what
 9  a gravity knife is.
10        Q.    When you say, that big, can you
11  say for the record?
12        A.    It was smaller than my thumb.
13        Q.    So it was smaller than your
14  thumb.  Would you say your thumb is four
15  inches, three inches?
16        A.    No, I would say maybe two
17  inches.
18        Q.    So you think it was smaller
19  than two inches?
20        A.    Yes.
21        Q.    You said someone said you had a
22  gravity knife, correct?
23        A.    Officer Ward.
24        Q.    Did you see the knife?
25        A.    I saw the knife when Officer
```

```
 1                    A.  WILLIAMS
 2    Ward, when he had it in -- when he had it
 3    in his presence.  I didn't see it before
 4    then.
 5          Q.     So if Officer Ward was in the
 6    front car, how did he get the gravity
 7    knife?
 8          A.     From his partner.
 9          Q.     So his partner handed him a
10    knife?
11          A.     Yes.
12          Q.     And this was not the utility
13    knife that was in the center console?
14          A.     No, it wasn't.
15          Q.     It was a different knife?
16          A.     Yes.
17          Q.     What did Officer Ward do when
18    he was handed the knife?
19          A.     He said, I have a gravity
20    knife.  And at that point, his partner
21    jumped into my vehicle and drove my vehicle
22    off without my consent and he followed him
23    and that's when we went to the 103rd
24    Precinct.
25          Q.     So when Officer Ward said you
```

1                       A.  WILLIAMS

2      have a gravity knife, did he do anything,

3      did he test it in any way?

4              A.      No, he didn't.

5              Q.      Did he open it?

6              A.      No, he didn't.

7              Q.      Did you see the other officer

8      open or test the knife?

9              A.      No.

10             Q.      But you're sure Officer Ward

11     did not open the knife?

12             A.      I am positive.

13             Q.      And he didn't test the knife?

14             A.      He didn't.

15             Q.      After Officer Ward said, you

16     have a gravity knife, did you say anything

17     to him?

18             A.      I said, What is a gravity

19     knife?  And I said, that's not my knife.

20             Q.      What did he say, if anything?

21             A.      He didn't say anything until we

22     got close to the precinct.

23             Q.      So after he said you have a

24     gravity knife, he drove off?

25             A.      He drove off behind the other

```
1                    A. WILLIAMS
2    searched me.
3         Q.    Do you know if Officer Ward
4    recovered anything from your person?
5         A.    They just took my wallet, and
6    my keys, you know, my personal items,
7    that's about it.
8         Q.    So your wallet and your keys?
9         A.    That's all I had.
10        Q.    Anything else?
11        A.    That's all I had.  Maybe
12   ChapStick.
13        Q.    So did Officer Ward conduct the
14   pat-down at the scene?
15        A.    At the scene, yes.
16        Q.    Did Officer Ward search you at
17   any other point?
18        A.    No.
19        Q.    So which Central Booking were
20   you taken to, the one in Queens?
21        A.    Yes.
22        Q.    Do you know what time you were
23   taken to Central Booking?
24        A.    It was probably -- it was still
25   dark, so it might have been around five, in
```

```
 1                    A. WILLIAMS
 2    like that officer should know he was wrong,
 3    what he did was wrong.  He took an oath to
 4    do the right thing, so I wanted to see it
 5    finished out, but the courts dismissed it.
 6         Q.    But you don't know why it was
 7    dismissed?
 8         A.    He never showed up to court.
 9         Q.    And when you say, he, do you
10    mean Officer Ward?
11         A.    Correct.
12         Q.    Did he show up to court at any
13    time?
14         A.    Not once.
15         Q.    Did you suffer any physical
16    injuries as a result of this incident?
17         A.    No.
18         Q.    Are you claiming any emotional
19    injuries as a result of your interactions
20    with the officers on January 17, 2014?
21         A.    Very emotional.  Very
22    emotional.  I mean, it angers -- you know
23    it angered me, it made me afraid of police.
24    And I have friends that are police, and
25    now, I just look at them differently.  If
```

EXHIBIT "7"

# ORIGINAL

1

2     UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
3     ----------------------------------------X
      ANTONIO WILLIAMS,
4
                                PLAINTIFF,
5

6           -against-              Case No.:
                                   16CV4615
7

8     THE CITY OF NEW YORK, NYPD OFFICER DANIEL
      WARD, NYPD DETECTIVE DANIEL GUKELBERGER and
9     NYPD SERGEANT DONALD KIPP,

10                              DEFENDANTS.
      ----------------------------------------X
11

12                    DATE: June 15, 2017

13                    TIME: 2:11 P.M.

14

15            VIDEOTAPED DEPOSITION of the

16     Defendant, POLICE OFFICER DANIEL WARD,

17     taken by the Plaintiff, pursuant to a

18     Notice and to the Federal Rules of Civil

19     Procedure, held at the offices of Sivin &

20     Miller, LLP., 20 Vesey Street, 14th Floor,

21     New York, New York 10007, before Rita

22     Papandrea, a Notary Public of the State of

23     New York.

24

25

```
 1

 2    A P P E A R A N C E S:

 3

 4    SIVIN & MILLER, LLP.
        Attorneys for the Plaintiff
 5      20 Vesey Street, Suite 1400
        New York, New York 10007
 6      BY: EDWARD SIVIN, ESQ.

 7

 8    ZACHARY W. CARTER, ESQ.
      CORPORATION COUNSEL
 9    NEW YORK CITY LAW DEPARTMENT
        Attorneys for the Defendants
10      100 Church Street
        New York, New York 10007
11      BY:  NICHOLAS D. MANNINGHAM, ESQ.
                 -and-
12           GARY MOY, ESQ.
        File #:  2016-036713
13

14

15    Also present:  Antonio Williams and
                     David Jimenez,
                     Legal Videographer
16

17              *         *         *

18

19

20

21

22

23

24

25
```

```
 1                    OFFICER D. WARD
 2         Q.    But you don't remember if it
 3   was parked at the time or moving?
 4         A.    It might have been stopped at a
 5   red light, I don't know if it was parked.
 6         Q.    Was it at an intersection when
 7   you first saw it or was it in between
 8   intersections?
 9         A.    I don't remember exactly.
10         Q.    When you first observed Mr.
11   Williams' vehicle, is there anything in
12   particular that caught your attention about
13   it, did you notice anything unusual about
14   it?
15              MR. MANNINGHAM:  Objection.
16         A.    No.
17         Q.    Now, you say when you saw the
18   vehicle, you saw it commit an infraction;
19   is that correct?
20         A.    Correct.
21         Q.    What was the infraction?
22         A.    Failed to signal.
23         Q.    Is that failed to signal before
24   pulling over, failed to signal before
25   pulling away from the curb, failed to
```

```
 1                    OFFICER D. WARD
 2         Q.     In the driver seat?
 3         A.     Yes.
 4         Q.     Had you said anything to him or
 5    given any directives before you first saw
 6    him?
 7         A.     I don't remember.
 8         Q.     Did you have a weapon with you
 9    at the time?
10         A.     Yes.
11         Q.     Was your weapon drawn at any
12    point?
13         A.     I don't remember.
14         Q.     Did you believe that Mr.
15    Williams had committed any type of crime or
16    violation, other than failing to signal
17    when you first approached the vehicle?
18                MR. MANNINGHAM:  Objection.
19         A.     I don't remember, no.
20         Q.     So tell me what happened when
21    you arrived at the driver side window of
22    Mr. Williams' vehicle?
23         A.     Um, from as far as what I can
24    remember is, he was in the driver seat,
25    there was a knife in the console, on the --
```

```
 1               OFFICER D. WARD
 2   it's a van, so like coming off the radio.
 3   It's not a center console, so I can
 4   actually -- I can see it from the doorway
 5   and there was a knife in the first cup
 6   holder.
 7        Q.    When for the first time did you
 8   see this knife?
 9        A.    As soon as I walked up.
10        Q.    So like immediately?
11        A.    Yes.
12        Q.    Was his window open at that
13   point?
14        A.    I am not sure.
15        Q.    Well, do you believe you saw it
16   through the window or through an opened
17   window?
18             MR. MANNINGHAM:  Objection.
19        A.    I am not sure.
20        Q.    Did you see him roll down his
21   window at any point?
22        A.    I am not sure if the window was
23   up or down.
24        Q.    Now, let's talk about this
25   center console.  You said there was a cup
```

```
 1                    OFFICER D. WARD
 2   automatically with a switch, with a spring.
 3   If it opens with a force of gravity, a
 4   butterfly knife, anything to assist in an
 5   opening from just pulling it out with your
 6   other hand.
 7        Q.    Are you saying that if you
 8   require your other hand to assist you in
 9   opening it, then it would be a legal knife,
10   correct?
11             MR. MANNINGHAM:  Objection.
12        A.    No, because it could still have
13   a switch button being automatic, spring
14   assisted.
15        Q.    Were you able to determine by
16   looking at the knife that you say you saw
17   in the cup holder, whether that knife was a
18   legal knife or an illegal knife?
19             MR. MANNINGHAM:  Objection.
20        A.    No.
21        Q.    Did you have an opinion one way
22   or the other?
23        A.    No.
24        Q.    What color was the knife?
25        A.    I am not sure.
```

```
 1                    OFFICER D. WARD
 2          A.     I believe so, but I don't
 3     remember specifically asking.
 4          Q.     Did you document anywhere that
 5     you asked him to pass the knife to you?
 6          A.     I don't believe so.  I don't
 7     know if it's in an affidavit, I would have
 8     to see it.
 9          Q.     Did you document anywhere that
10     he refused to pass the knife to you?
11          A.     I don't believe so.
12          Q.     So am I correct that you're
13     surmising that he declined to pass the
14     knife to you and you're surmising that
15     based on the fact that you brought him out
16     of the car; is that correct?
17                    MR. MANNINGHAM:  Objection.
18          A.     Um, no.  I don't know what
19     surmising means.
20          Q.     You're forming the conclusion.
21          A.     Of how I recovered the knife?
22          Q.     Yes.
23          A.     Yes.
24          Q.     You didn't ask him to step out
25     of the car for his supposedly having failed
```

```
 1                    OFFICER D. WARD
 2    general procedure or do you actually have
 3    an recollection of actually saying those
 4    words?
 5                    MR. MANNINGHAM:  Objection.
 6         A.    No, I have -- I can't
 7    specifically remember the word for word
 8    what I said.
 9         Q.    Do you remember any of the
10    words?
11         A.    No.
12         Q.    Okay.  Did he -- strike that.
13                    After he got out of the
14    vehicle, what's the next thing that
15    happened?
16         A.    Um, I would have had -- I would
17    have had grabbed the knife.
18         Q.    Okay, again, your choice of
19    words, you said I would have.  You're
20    talking general procedure?
21         A.    Yes.  I don't remember
22    specifically grabbing the knife.
23         Q.    Okay.  But you assume you did
24    grab the knife, correct?
25         A.    Correct.
```

```
 1                    OFFICER D. WARD
 2          A.     I have no idea.
 3          Q.     Do you recall anything about
 4     his appearance?
 5          A.     No.
 6          Q.     So you reached into the
 7     vehicle, you grabbed the knife.  When you
 8     grabbed the knife -- by the way, did you
 9     put your entire body in the vehicle at that
10     point?  Did you like get up on to the seat
11     or just your arm or something else?
12          A.     I wouldn't know specifically.
13     I just assume I would just reach in.
14          Q.     When you reached in to grab the
15     knife, did you see anything else in the
16     area of the cup holder?
17          A.     Nothing else illegal.
18          Q.     Well, did you see anything
19     else, any, you know, food?
20          A.     I don't remember anything like
21     that, no.
22          Q.     At that point did it appear to
23     you that the area was cluttered, clean or
24     any other way you can characterize it?
25          A.     No idea.
```

```
 1                  OFFICER D. WARD
 2    there because he was your partner, do you
 3    recall seeing him at the scene of the
 4    arrest?
 5         A.    I don't remember, no.
 6         Q.    Do you recall having any
 7    conversations with him at the scene of the
 8    arrest?
 9         A.    No.
10         Q.    Did he ever search the vehicle?
11         A.    I don't remember.
12         Q.    Did you ever search the
13    vehicle, other than reaching in and
14    grabbing, what you say was a gravity knife?
15              MR. MANNINGHAM:  Objection.
16         A.    I don't remember.
17         Q.    As a matter of general
18    procedure, once you would find contraband
19    in a vehicle, would you not then search the
20    vehicle to see if there is other contraband
21    there?
22              MR. MANNINGHAM:  Objection.
23         A.    No, I wouldn't search the whole
24    vehicle, unless it was being vouchered,
25    which I don't believe it was.  Which would
```

```
 1                    OFFICER D. WARD
 2      knife that you say you recovered?
 3                    MR. MANNINGHAM:  Objection.
 4           A.    Not -- I don't have them saved
 5      anywhere.
 6           Q.    No.  But have you ever seen
 7      photographs of the knife that you say you
 8      recovered?
 9           A.    I don't remember seeing photos,
10      no.
11           Q.    You can close the knife.
12           A.    (Complying to request.)
13           Q.    You can put it back in the
14      envelope now too.
15           A.    This one (indicating.)
16           Q.    This one here.
17                    MR. MOY:  The envelope, can we
18              just reseal?
19                    MR. SIVIN:  Yes, at the end of
20              the deposition.
21           Q.    Where were you when you tested
22      the knife?
23           A.    I don't remember exactly.
24           Q.    Do you have an opinion as to
25      where you were based on general procedure?
```

EXHIBIT "8"

|||||| |||||| |||||| |||| ||| | | |||| ||||| ||||| ||||| ||||| ||||| ||| | | ||||| ||||| ||||| ||||| ||||| ||||| ||||| ||||| |||||
AF7UM59615645717

CRIMINAL COURT OF THE CITY OF NEW YORK
PART APAR, COUNTY OF QUEENS

Q14603454

THE PEOPLE OF THE STATE OF NEW YORK | STATE OF NEW YORK
                                      | COUNTY OF QUEENS
                    V.

ANTONIO WILLIAMS (44Y)
                         DEFENDANT

POLICE OFFICER DANIEL WARD OF 103RD PRECINCT, TAX REG#: 947396,  BEING
DULY SWORN, DEPOSES AND SAYS THAT ON OR ABOUT JANUARY 17 2014  AT ABOUT
3:45AM, AT THE NE INTERSECTION OF MERRICK BOULEVARD AND LIBERTY AVENUE,
COUNTY OF QUEENS, STATE OF NEW YORK, THE DEFENDANT COMMITTED THE
OFFENSES OF:

PL 265.01-1 (EFF. 11/1/2008) [AM] CRIMINAL POSSESSION OF  A WEAPON IN
        THE FOURTH DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
VTL 1163-C [V] TURNING MOVEMENTS AND REQUIRED SIGNALS

PL 265.01-1 (EFF. 11/1/2008) [AM] CRIMINAL POSSESSION OF  A WEAPON IN
THE FOURTH DEGREE - (DNA SAMPLE REQUIRED UPON CONVICTION)
        --- POSSESS ANY FIREARM, ELECTRONIC DART GUN, ELECTRONIC STUN
        GUN, GRAVITY KNIFE, SWITCHBLADE KNIFE, PILUM BALLISTIC KNIFE,
        METAL KNUCKLE KNIFE, CANE SWORD, BILLY, BLACKJACK, BLUDGEON,
        PLASTIC KNUCKLES, METAL KNUCKLES, CHUKA STICK, SAND BAG,
        SANDCLUB, WRIST-BRACE TYPE SLINGSHOT OR SLINGSHOT, SHIRKEN OR
        "KUNG FU STAR";

VTL 1163-C [V] TURNING MOVEMENTS AND REQUIRED SIGNALS
        --- STOP OR SUDDENLY DECREASE THE SPEED OF A VEHICLE WITHOUT
        FIRST GIVING AN APPROPRIATE SIGNAL IN THE MANNER PROVIDED HEREIN
        TO THE DRIVER OF ANY VEHICLE IMMEDIATELY TO THE REAR WHEN THERE
        IS OPPORTUNITY TO GIVE SUCH SIGNAL.

THE ABOVE OFFENSES WERE COMMITTED AS FOLLOWS:

DEPONENT STATES THAT AT THE ABOVE MENTIONED DATE, TIME AND PLACE OF
OCCURRENCE HE OBSERVED THE DEFENDANT, ANTONIO WILLIAMS, OPERATING A 1999
WHITE FORD WHICH FAILED TO SIGNAL WHEN MAKING A TURN.

DEPONENT FURTHER STATES THAT HE OBSERVED AND RECOVERED A GRAVITY KNIFE
FROM THE CENTER CONSOLE OF SAID VEHICLE.

DEPONENT FURTHER STATES THAT HIS CONCLUSION THAT SAID KNIFE IS A GRAVITY
                                    01/17/2014  12:38PM (GMT-05:00)

**DEF-017**

WILLIAMS,ANTONIO  014d03454

KNIFE IS BASED UPON HIS TRAINING AND THE FACT THAT SAID KNIFE WAS
ACTIVATED BY DEPONENT TO AN OPEN AND LOCKED POSITION THROUGH THE FORCE
OF GRAVITY.

FALSE STATEMENTS MADE IN THIS DOCUMENT ARE
PUNISHABLE AS A CLASS A MISDEMEANOR PURSUANT
TO SECTION 210.45 OF THE PENAL LAW

_1/17/14_ _DOVE_
DATE      SIGNATURE

SWORN TO BEFORE ME ON THE
DAY OF

_____
DATE      SIGNATURE

01/17/2014  12:38PM (GMT-05:00)

**DEF-018**

EXHIBIT "9"



## New York City Police Department
### Omniform System – Arrests

RECORD CONTAINS SEALED INFORMATION.
THIS RECORD MAY NOT BE MADE AVAILABLE TO ANY PERSON
OR PUBLIC OR PRIVATE AGENCY OUTSIDE THE POLICE DEPARTMENT.

**RECORD STATUS: SEALED**

**Arrest ID:**
**Q14603454 - K**

**Arrest Location: NORTH EAST CORNER MERRICK BOULEVARD & LIBERTY AVENUE** — **Pct: 103**

**Arrest Date: 01-17-2014** — Processing Type: ON LINE — Current Location of Perpetrator:
**Time: 03:45:00** — DCJS Fax Number: QO002551 — Borough: Queens
Sector: H — Special Event Code: NO - — Type:
Strip Search Conducted: NO — DAT Number: 0 — Location: 103 PRECINCT
Viper Initiated Arrest: NO
Stop And Frisk: NO — Return Date: 0000-00-00
Serial #: 0000-000-00000

**ARREST DATA - COMPLAINT NOT REQUIRED**

Jurisdiction: NYPD — **NYC School Safety Data:** — **NYC Transit Data:**
Premises: STREET — On School Property: — Station:
Location Within: PUBLIC SIDEWALK — School Type: — Line #:
Occur.Date/Time: 2014-01-17 - 03:45 — School Num: — Location:
**NYC Housing Development:** — School Name:

Offense Location: NORTH EAST CORNER MERRICK BOULEVARD & LIBERTY AVENUE — Borough: QUEENS

**SEALED** — SEALED

**CHARGES:** — Arrest #: Q14603454

| CHARGE | ATTEMPT? | LAW CODE | CLASS | TYPE | COUNTS | DESCRIPTION |
|---|---|---|---|---|---|---|
| TOP | No | PL 265.02 01 | F | D | 1 | CRIM POSS WEAP-3RD;PREV CONV |
| #02 | No | VTL1163 0A | I | 0 | 1 | ILL SIGNAL:UNSAFE/FAIL TO |

| DWI Arrest from: | # Injured: 00 | # Fatalities: 00 | Test Given: | B.A.C: | Reason Not Forfeit: |
|---|---|---|---|---|---|

**SEALED** — SEALED

**DETAILS:** — Arrest #: Q14603454

AT TPO A/O OBSERVED DEFT DRIVING A 1999 WHITE FORD VAN NORTH CAROLINA PLATE #BMY6337 AND DEFT FAILED TO SIGNAL.
UPON FURTHER INVESTIGATION DEFT WAS FOUND TO BE IN POSSESSION OF A BROWN HANDLE GRAVITY KNIFE.

**SEALED** — SEALED

**DEFENDANT: WILLIAMS, ANTONIO** — NYSID #: 05982980Q — Arrest #: Q14603454

Nick/AKA/Maiden: — Height: 5FT 11IN — Order Of Protection: NO
Sex: MALE — Weight: 180 — Issuing Court:
Race: BLACK — Eye Color: BROWN — Docket #:
Age: 44 — Hair Color: BLACK — Expiration Date:
Date Of Birth: 10/13/1969 — Hair Length: NORMAL — Relation to Victim: UNKNOWN/NONE
U.S. Citizen: YES — Hair Style: STRAIGHT — Living together: NO
Place Of Birth: — Skin Tone: LIGHT — Can be identified: NO
Is this person not Proficient

**DEF-001**

Case 1:16-cv-04615-ENV-SMG   Document 38   Filed 01/12/18   Page 66 of 67 PageID #: 288

| | | |
|---|---|---|
| In English?: NO | Complexion: BLOTCHY | |
| If Yes, Indicate Language: | | |
| Accent: NO | Soc.Security #: | Gang/Crew Affiliation: NO |
| | Occupation: UNKNOWN | Name: |
| Identification ID: | | Identifiers: |
| Identification #: | | |
| Physical Condition: APPARENTLY NORMAL | Lic/Permit Type: | |
| Drug Used: NONE | Lic/Permit No: | |

| LOCATION | ADDRESS | CITY | STATE/CNTRY | ZIP | APT/ROOM | PCT |
|---|---|---|---|---|---|---|
| HOME-PERMANENT | 209-14 99 AVENUE | QUEENS | NEW YORK | | | 105 |

Phone # and E-Mail Address:

N.Y.C.H.A. Resident: NO  N.Y.C. Housing Employee: NO  On Duty: NO
Development:          N.Y.C. Transit Employee: NO

**Physical Force:NONE**

Gun:
Weapon Used/Possessed: POSSESSED          Make:          Recovered: NO
Non-Firearm Weapon: CUTTING INSTRUMENT     Color:     Serial Number Defaced:
Other Weapon Description: GRAVITY KNIFE    Caliber:          Serial Number:
                                          Type:
                                          Discharged: NO

Used Transit System: NO
Station Entered:
Time Entered:
Metro Card Type:
Metro Card Used/Poses:
Card #:

| CRIME DATA | DETAILS |
|---|---|
| MODUS OPERANDI | UNKNOWN |
| ACTIONS TOWARD VICTIM | UNK |
| CLOTHING | OUTERWEAR - SWEAT SHIRT OR JOGGING JACKET - BLUE |
| CLOTHING | FOOTWEAR - WORK BOOTS - BLACK |
| CLOTHING | HEADGEAR - SKI CAP OR WATCH CAP - BROWN |
| CLOTHING | ACCESSORIES - WORK CLOTHES - TAN |
| CHARACTERISTICS | UNKNOWN |
| BODY MARKS | -UNKNOWN |
| BODY MARKS | -UNKNOWN |
| IMPERSONATION | UNKNOWN |

| SEALED | SEALED |
|---|---|

| JUVENILE DATA: | Arrest #: Q14603454 |
|---|---|

Juvenile Offender:   Relative Notified:  Personal Recog:
Number Of Priors: 0          Name:
School Attending:    Phone Called:
Mother's Maiden Name:   Time Notified:

| SEALED | SEALED |
|---|---|

| ASSOCIATED ARRESTS: | Arrest #: Q14603454 |
|---|---|
| ARREST ID  COMPLAINT # | |

| SEALED | SEALED |
|---|---|

**DEF-002**

ARREST Report - Q14603454

Page 3 of 3

**No Vehicles for Arrest #**

| SEALED | SEALED |
|---|---|

**DEFENDANTS CALLS:** | Arrest #: Q14603454

CALL # NUMBER DIALED NAME - PROVIDED BY DEFENDANT NAME AS LISTED IN CELL PHONE RELATIONSHIP CALL COMPLETED
1  . .     REFUSED,REFUSED
2  . .             ,
3  . .             ,

| SEALED | SEALED |
|---|---|

**INVOICES:** | Arrest #: Q14603454

INVOICE# COMMAND PROPERTY TYPE VALUE

| SEALED | SEALED |
|---|---|

**ARRESTING OFFICER:** POM DANIEL WARD | Arrest #: Q14603454

| Tax Number: 947596 | On Duty: YES | **Force Used:** NO |
| Other ID (non-NYPD): 947596 | In Uniform: NO | Type: |
| Shield: 21743 | Squad: AC | Reason: |
| Department: NYPD | Chart: 23 | Officer Injured: NO |
| Command: 103 | Primary Assignment: | |

| SEALED | SEALED |
|---|---|

| Arresting Officer Name:<br>POM WARD, DANIEL | Tax #:<br>947596 | Command:<br>103 | Agency:<br>NYPD |
|---|---|---|---|
| Supervisor Approving:<br>SGT KIPP DONALD | Tax #:<br>904278 | Command:<br>103 | Agency:<br>NYPD |
| Report Entered by:<br>POM WARD, DANIEL | Tax #:<br>947596 | Command:<br>103 | Agency:<br>NYPD |

END OF ARREST REPORT
Q14603454

**DEF-003**