```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
ANTONIO WILLIAMS,                                           :
                                                            :
                            Plaintiff,                      :
                                                            :       MEMORANDUM & ORDER
            -against-                                       :
                                                            :       16-cv-4615 (ENV) (VMS)
THE CITY OF NEW YORK, OFFICER DANIEL                        :
WARD, and DETECTIVE DANIEL                                  :
GUKELBERGER,                                                :
                                                            :
                            Defendants.                     :
----------------------------------------------------------- x
```

VITALIANO, D.J.

Plaintiff Antonio Williams was driving a van in Queens when he was allegedly subjected to an unlawful stop and arrest. Am. Compl. ¶¶ 18, 25, 47, Dkt. 17. After the Queens County District Attorney's Office ("QCDA") dismissed the charges against Williams, he filed the operative complaint, bringing constitutional claims for illegal search and seizure, excessive force, false arrest and malicious prosecution, as permitted by 42 U.S.C. § 1983, along with a state law claim for malicious prosecution. Dkt. 17.

On May 30, 2019, this Court granted in part and denied in part defendants' motion for summary judgment on Williams's false arrest, illegal search and seizure, and excessive force claims. Dkt. 42. Now, defendants the City of New York ("City"), Daniel Ward, and Daniel Gukelberger have moved again for summary judgment, contending that plaintiff's federal malicious prosecution claim as well as his state law malicious prosecution claim against Detective Gukelberger cannot withstand scrutiny. Dkt. 33. For the reasons below, defendants' motion is denied in its entirety.

Background[1]

On January 17, 2014, Officer Ward swore to, and signed, a criminal court complaint setting forth charges against Williams for count one Criminal Possession of a Weapon in the Fourth Degree and count two violation of New York Vehicle and Traffic Law § 1163–C. Pl. Supp. 56.1 ¶ 5, Dkt. 56; Defs. Resp. 56.1 ¶ 5, Dkt. 58. That day, Williams had been driving a van in Queens when Officer Ward and Detective Gukelberger pulled him over after Officer Ward allegedly saw him fail to signal before making a turn. Defs. 56.1 ¶¶ 1–3, Dkt. 34; Ward Tr. at 30:17–22, Ex. 7, Dkt. 38. A search of the van was conducted; and Detective Gukelberger retrieved a knife from the van. *See Williams*, 2019 WL 11318049, at *2.[2] The parties dispute whether the knife retrieved was an illegal gravity knife. *Id.* Williams claims he signaled before making the turn and that the knife is not his. Williams Tr. at 84–87, Ex. 11 attached to Sivin Decl., Dkt. 55; Pl. Supp. 56.1 ¶ 4.

Between March 3, 2014 and October 7, 2015, Williams travelled from North Carolina to Queens County Criminal Court for court appearances between ten to fifteen times. Williams Tr. at 129:22–25.[3] On March 3, 2014, QCDA offered plaintiff a plea deal requiring him to plead

---

[1] Familiarity with the Court's prior decision, *Williams v. City of N.Y.*, No. 16-CV-4615, 2019 WL 11318049, at *1 (E.D.N.Y. May 18, 2019), is presumed. Only the facts and procedural history relevant to this motion are repeated here and are drawn from the pleadings, the Local Rule 56.1 filings, and the parties' varied evidentiary submissions. Unless otherwise noted, the facts related here are undisputed and are construed, as they must be, in the light most favorable to Williams, as the non-movant.

[2] The facts surrounding the discovery of the knife, including which facts are disputed, are recounted in detail in *Williams*, 2019 WL 11318049, at *1–2.

[3] The QCDA "Record of Court Action" shows that plaintiff had twelve scheduled court dates between March 3, 2014 and October 7, 2015. Ex. 3 attached to Sivin Decl., Dkt. 55. Williams testified during his deposition that he never missed a single court appearance. Williams Tr. at 130:5–10.

2

guilty to disorderly conduct and to pay a $150 fine. The offer was rejected. On April 28, 2014 and on June 19, 2014, QCDA offered plaintiff this same deal and he rejected it both times. Pl. Supp. 56.1 ¶ 10; Def. Resp. 56.1 ¶ 10. Three months later, QCDA offered a similar deal but with a reduction of the fine to $50. Plaintiff rejected this offer as he had the other ones. Two months after that rejection, the prosecution offered Williams essentially the same plea but backtracked to the original $150 fine. That led to another rejection by Williams. Pl. Supp. 56.1 ¶ 11; Def. Resp. 56.1 ¶ 11.

The offers and rejections continued. Over a year after Williams's arrest, QCDA offered plaintiff an adjournment in contemplation of dismissal ("ACD") as to both charges, followed by a one-day sealing under C.P.L. § 160.50. Plaintiff rejected this offer, maintaining that he "ha[d] been wronged" and that he wanted to prepare for trial. Ex. 5 at 7:14–16, attached to Sivin Decl., Dkt. 55; Pl. Supp. 56.1 ¶ 12; Def. Resp. 56.1 ¶ 12. The Court then assigned plaintiff an 18-B attorney who requested a *Mapp* hearing for the recovered knife. Pl. Supp. 56.1 ¶ 12; Def. Resp. 56.1 ¶ 12; Ex. 5 at 9:3–6, Dkt. 55.

Following an all too familiar trip from North Carolina, Williams appeared in Queens County Criminal Court on July 16, 2015 where his attorney asked again to examine the knife allegedly found in plaintiff's car. Ex. 6 at 5:23–6:10, attached to Sivin Decl., Dkt. 55. The court granted his request, but the prosecutor balked, refusing, without explanation, to permit the knife to be taken from the bag. The prosecutor protested that anyone examining the knife must not touch, open, take it out of the plastic, or remove the tape wrapped around the knife. *Id.* at 7:4–7. The trial court remarked that plaintiff "ha[s] to be able to see the knife[.]" *Id.* at 7:15–16. At this point, the prosecutor offered to dismiss the weapons charge and give Williams an ACD with a one-week sealing as to the remaining traffic charge; offer rejected. Pl. Supp. 56.1 ¶ 16; Def.

3

Resp. 56.1 ¶ 16; Ex. 6 at 7–8. Notwithstanding the rejections, QCDA still moved to dismiss the weapons count, which the court granted. Ex. 6 at 10:1–7; Pl. Supp. 56.1 ¶ 16.[4] A trial on the traffic violation was set for August 12, 2015. Ex. 6 at 12–13; Pl. Supp. 56.1 ¶ 17.

On the date of trial, Williams returned to Queens County Criminal Court for a final time. Ex. 7 at 11:19–25, attached to Sivin Decl., Dkt. 55. At the hearing, Williams's attorney announced that he was moving to dismiss the remaining traffic charge. *Id.* at 11:6–7. The court gave QCDA a month to respond. *Id.* at 11:12–13. Instead, on October 7, 2015, QCDA conceded C.P.L. § 30.30, ending the long and protracted state criminal proceeding. *See* Ex. 8 at 14:6, attached to Sivin Decl., Dkt. 55. The certificate of disposition indicates that both charges were dismissed and sealed on speedy trial grounds. *See* Ex. 10 attached to Sivin Decl., Dkt. 55; Pl. Supp. 56.1¶ 18; Def. Resp. 56.1 ¶ 16.

Standard of Review

A federal district court must grant summary judgment when, construing the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018). The moving party bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

---

[4] There is some dispute over when and on what basis the weapons charge was dismissed. Defendants contend that the charge was not dismissed until October 7, 2015 on speedy trial grounds as reflected in the certificates of disposition. Def. Resp. 56.1 ¶ 16; Ex. 10. But the hearing testimony from July 16, 2015, unmistakably has the prosecutor saying: "I'm moving to dismiss the first count. People ready for trial on the second count." Ex. 6 at 10:1–2. The court responded, "People's motion is granted. That count is dismissed." *Id.* at 10:6–7. Later during the hearing, the prosecutor reaffirmed, "the knife is no longer the subject of the trial." Ex. 6 at 11:18–19.

4

absence of a genuine issue of material fact." *Sentry Ins. v. Brand Mgmt. Inc.*, 120 F. Supp. 2d 277, 284 (E.D.N.Y. 2015). When assessing the merits of a summary judgment motion, a district court cannot "try issues of fact, but rather [must] 'determine whether there *are* issues of fact to be tried.'" *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 188 (E.D.N.Y. 2014) (quoting *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995)) (emphasis original).

Not all facts, however, are material. A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 106 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211 (1986). For a dispute over material facts to be "genuine," the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Assertions of fact, moreover, must be supported by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

In opposing a motion for summary judgment, the nonmoving party "may not rely solely on 'conclusory allegations or unsubstantiated speculation' in order to defeat" the motion. *S.W. ex rel. Marquis-Abrams*, 46 F. Supp. 3d at 188. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Kindle v. Dejana*, 238 F. Supp. 3d 353 (E.D.N.Y. 2017) (emphasis original). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." *Weiss v. Nat'l Westminister Bank PLC*, 278 F. Sup. 3d 636, 640 (E.D.N.Y. 2017) (quoting *Gall v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

5

<u>Discussion</u>

I.  <u>Federal Malicious Prosecution Claim</u>

To prevail on a malicious prosecution claim under § 1983 a plaintiff must show that (1) defendant started a criminal proceeding (2) which has favorably terminated (3) and which was not supported by probable cause, and (4) defendant acted maliciously.  *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004); *Mitchell v. City of N.Y.*, 841 F.3d 72, 79 (2d Cir. 2016).  Here, the only element in dispute is whether plaintiff can establish "favorable termination" of his criminal proceeding.

Defendants argue that in the wake of the Second Circuit's decision in *Lanning v. City of Glen Falls*, 908 F.3d 19 (2d Cir. 2018), plaintiff cannot establish that his criminal case, which, defendants contend, was dismissed on N.Y. C.P.L. § 30.30 speedy trial grounds constitutes favorable termination.  Defs. Br. at 3, Dkt. 57.  In *Lanning*, the Circuit held that its prior decisions requiring "affirmative indications of innocence" to establish "favorable termination" continue to govern § 1983 malicious prosecution claims, regardless of deviations from this standard in New York State malicious prosecution law.  908 F.3d at 25.  Defendants claim that because QCDA dismissed Williams's criminal charges solely on § 30.30 grounds, this dismissal does not affirmatively indicate his innocence.

Even assuming for purposes of argument that QCDA dismissed both charges on speedy trial grounds, defendants' argument is still without merit.  In support of their position, defendants point to a single post-*Lanning* district court case, *Thompson v. City of N.Y.*, which held that "[t]he dismissal of [plaintiff's] case on speedy trial grounds does not affirmatively indicate his innocence, as required under Section 1983."  No. 17-CV-3064, 2019 WL 162662, at *1

6

(S.D.N.Y. Jan. 10, 2019). [5] Anchored in this decision, defendants urge application of a bright line rule that dismissals based on speedy trial grounds do not satisfy the requirements under *Lanning* for favorable termination.

Since *Thompson*, however, there have been several district court cases that have rejected the idea that post-*Lanning*, dismissals on speedy trial grounds cannot, as a categorical matter, meet the favorable termination prong. *See, e.g.*, *Luna v. City of N.Y.*, No. 18-CV-4636, 2019 U.S. Dist. LEXIS 135376, at *27–36 (S.D.N.Y Aug. 9, 2019); *Blount v. City of N.Y.*, No. 15-CV-5599, 2019 U.S. Dist. LEXIS 34969, at *13 (E.D.N.Y Mar. 5, 2019); *Scott v. City of N.Y.*, No. 16-CV-834, 2020 WL 208915, at *7 (E.D.N.Y. Jan. 14, 2020); *Grytsyk v. Morales*, No. 19-CV-3470, 2021 WL 1105368, at *8 (S.D.N.Y. Mar. 22, 2021); *Nelson v. City of N.Y.*, No. 18-CV-4636, 2019 WL 3779420, at *12 (S.D.N.Y. Aug. 9, 2019). As many of these cases point out, *Lanning* held only that the elements of a § 1983 malicious prosecution claim are governed by federal interpretation of common law tort, and that federal courts are not bound by subsequent changes in state law. *See Blount*, 2019 U.S. Dist. LEXIS 34969, at *13–14. The decision did not create a bright line rule about whether dismissals on speedy trial grounds can demonstrate affirmative indications of innocence.

Many decisions in this line of cases have acknowledged the preponderance of the Second Circuit's decision in *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997), which held that dismissals for lack of timely prosecution, including speedy trial dismissals, should generally be considered favorable termination to the accused because it "compels an inference" that there was an unwillingness or inability to based on a lack of reasonable grounds for prosecution. *See id.* at

---

[5] *Thompson* is distinguishable because the undisputed facts of that case showed that probable cause existed. 2019 WL 162662, at *4. Probable cause is a complete defense against a claim for malicious prosecution. *See Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003).

949.  To view it otherwise "would have the effect of unfairly "compel[ling] one charged with a criminal offense to waive his constitutional or statutory right to a speedy trial in order to preserve his right to civil retribution for a demonstrated wrong." *Id.* at 950 (internal quotation marks omitted).

There has been some debate about whether *Murphy*, which was decided before *Lanning*, remains good law.  *See, e.g.*, *Minus v. City of N.Y.*, 488 F. Supp. 3d 58, 64–67 (S.D.N.Y. 2020).  The Circuit cited *Murphy* multiple times in the *Lanning* decision and it did not suggest that it was overturning *Murphy*.  *See Lanning*, 908 F.3d at 27 & n.6; *see also Grytsyk*, 2021 WL 1105368, at *8 (declining to read *Lanning* as rendering the holding of *Murphy* "untenable").  The Circuit has continued to cite *Murphy* for malicious prosecution claims.  *See, e.g.*, *Dantas v. Citigroup, Inc.*, 779 F. App'x. 16, 23 (2d Cir. 2019) (summary order); *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019); *Ashley v. City of New York*, 992 F.3d 128, 140 (2d Cir. 2021) (citing *Murphy* for the principle that "whether a non-merits termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed implies a lack of reasonable grounds for the prosecution." (internal quotation marks omitted)).  Several district courts have conducted thorough analyses and found that *Murphy* survives *Lanning*.  *See Nelson*, 2019 WL 3779420, at *12; *Grytsyk*, 2021 WL 1105368, at *8 ("Defendants' argument — that Grytsyk cannot, as a categorical matter, establish favorable termination for purposes of his Section 1983 malicious prosecution claim because the dismissal of his charges was on speedy trial grounds — remains foreclosed by [*Murphy*]").  Based on these precedents, *Murphy* remains good law is the better view.

Instructively, *Murphy*, which was cited multiple times in *Lanning*, also emphasized that whether a non-merits dismissal "is indicative of innocence depends on the nature and

8

circumstances of the termination; the dispositive inquiry is whether the failure to proceed impl[ies] a lack of reasonable grounds for the prosecution." 118 F.3d at 948 (internal quotation marks and citations omitted). Put differently, whether dismissal on speedy trial grounds can affirmatively demonstrate Williams's innocence depends on the totality of the circumstances surrounding the dismissal, and, "if there is a question as to the nature of the circumstances leading to that termination, that question is one for the trier of fact." *Id.*

Applying the reasoning of *Murphy* and the post-*Lanning* cases in fealty with it, the circumstances surrounding dismissal of Williams's prosecution could "compel an inference" that the prosecutor lacked reasonable grounds for prosecution. That is, a reasonable juror could find that the context of the dismissal of Williams's charges show favorable termination, including the affirmative indication of innocence requirement. Here, Williams refused to engage in plea discussions, insisting on his innocence. QCDA also refused to comply with the disclosure of the knife, the crux of QCDA's weapons charge, which plaintiff sought to suppress—a move which if successful would have led to the inability of the prosecution to prove its case. Ex. 6 at 5:23–6:3; 7:13–16. These facts, viewed in the light most favorable to plaintiff, could suggest that Williams is innocent. *See, e.g.*, *Murphy*, 118 F.3d at 951; *cf. Ashley*, 992 F.3d at 140–142.

More importantly, there is, at best from the defendants' perspective, a genuine issue of fact as to whether the weapons charge was dismissed on speedy trial grounds in the first place. Pl. 56.1 ¶ 16; Def. 56.1 ¶ 16. At the criminal court hearing on July 16, 2015, after being pressed by the court and defense to properly disclose the knife, the prosecutor clearly states that he is "moving to dismiss the first count" making the knife "no longer the subject of the trial." Ex. 6 at 10:1; 11:18–19. The court granted the motion to dismiss the weapons charge. Ex. 6 at 10:6–7. Based on this recorded exchange, plaintiff claims that QCDA separately abandoned the weapons

9

charge at the July 16 hearing. Pl. Br. at 9. Defendants on the other hand, insist that both the weapons and traffic charges were dismissed on speedy trial grounds on October 7, 2015. As evidence, they point to the Certificate of Disposition issued by the trial court after the prosecution conceded 30.30, which lists both charges as dismissed on speedy trial grounds. The dispute over the circumstances and details surrounding the dismissal of charges, including basic facts such as when and on what grounds the weapons charge was dismissed, present material issues of fact as to whether the criminal proceeding terminated in Williams's favor that cannot be resolved at this stage of the litigation. *See Genovese v. Cnty. of Suffolk*, 128 F. Supp. 3d 661, 672–73 (E.D.N.Y. 2015) (questions of fact like these regarding the basis for dismissal of each charge must be resolved by a jury).

II.     State Malicious Prosecution Claim[6]

Finally, defendants contend that Williams's malicious prosecution claim against Detective Gukelberger under New York state law cannot survive summary judgment because there is no evidence that Detective Gukelberger was personally involved in starting or pursuing the prosecution, which, they argue, is an essential element of a malicious prosecution cause of action under state law. *See Luna*, 2019 U.S. Dist. LEXIS 135376, at *49. Defendants point out that it was Officer Ward, not Detective Gukelberger, who signed the complaint, and, more importantly, that there is no record evidence whatsoever that Detective Gukelberger personally "initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, [or] by signing felony complaints." *Yan v. City of N.Y.*, No. 9-CV-1435,

---

[6] "[C]laims under both 42 U.S.C. § 1983 and under New York law, the elements of these claims are substantially the same whether brought under § 1983 or state law, so far as the individual defendants are concerned." *Chimurenga v. City of N.Y.*, 45 F. Supp. 2d 337, 341 (S.D.N.Y. 1999).

10

2011 U.S. Dist. LEXIS 137549, at *29 (E.D.N.Y. Nov. 30, 2011) (internal quotation marks omitted).

But those are not the only ways in which an officer can be found to have initiated a prosecution for purposes of a malicious prosecution claim. "Persons who conspire . . . to manufacture evidence that is likely to influence the prosecutor's decision to commence proceedings and the jury's verdict," for instance, are jointly liable for malicious prosecution even if they were not the ones who officially began the prosecution. *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 272 (E.D.N.Y. 2000). Thus, officers, such as Detective Gukelberger, accused of providing false information or fabricating evidence that influences a decision to prosecute may, upon a showing of sufficient credible record evidence, also be held liable for malicious prosecution. *See Chimurenga*, 45 F. Supp. 2d at 343.

Here, viewing the evidence in the light most favorable to Williams, there is a triable issue of fact over whether Detective Gukelberger planted the knife that led to Williams's prosecution. Plaintiff claims that the knife is not his and Detective Gukelberger is the one who brought the knife from plaintiff's van.[7] Having retrieved the key piece of evidence leading to plaintiff's weapons charge, Detective Gukelberger could be found liable for malicious prosecution if the jury were to believe Williams's account. There is substantial evidence that Detective Gukelberger recovered the knife that was the heart and soul of the criminal offense charged against Williams, meaning that plaintiff's arrest raises a question of fact for the jury on whether

---

[7] *See Williams*, 2019 WL 11318049, at *2 ("The City and Williams appear to agree that Detective Gukelberger returned with a knife"). But Detective Gukelberger later testified that he has "no recollection" of a knife being recovered in Williams's vehicle on January 17, 2014 or any recollection of effecting any arrests on that date. Gukelberger Tr. at 16:16–17, attached as Ex. 13 to Sivin Decl., Dkt. 55. Gukelberger's testimony bolsters the point. There are genuine issues of material fact over Detective Gukelberger's involvement with the knife.

11

this conduct constitutes an initiation of prosecution. Defendants' motion for summary judgment on this issue is denied. *See, e.g.*, *Noga v. City of Schenectady Police Officers*, 169 F. Supp. 2d 83, 90 (N.D.N.Y. 2001) (substantial evidence that defendant officer induced a third person to initiate a complaint and failed to provide information which would have prevented the investigation, arrest and prosecution of plaintiff presents a triable issue of fact as to whether the officer initiated the prosecution); *Williams v. City of N.Y.*, No.5-CV-10230, 2007 WL 2214390, at *11 (S.D.N.Y. July 26, 2007) (denying summary judgment motion where, taking plaintiff's facts as true, a reasonable jury could conclude that the officers fed false information which founds its way into the complaint); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) (reversing summary judgment on malicious prosecution claim because a reasonable jury could find that the officer lied about the circumstances surrounding plaintiff's arrest and that the officers were jointly involved in a common scheme).

Conclusion

For these reasons, defendants' motion is denied in its entirety. The parties are directed to contact Magistrate Judge Vera M. Scanlon for the continued pretrial management of this case.

So Ordered.

Dated: Brooklyn, New York
        April 15, 2021

                                                              /s/ ENV
                                                               ERIC N. VITALIANO
                                                               United States District Judge